IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DREW SCHNEIDER, | ) | CASE NO. 1:15-cv-1176 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE McHARGH |
| | ) | |
| FIFTH WHEEL, LLC, et al. | ) | |
| | ) | **OPINION & ORDER** |
| Defendants. | ) | |

On July 25, 2016, the undersigned held a bench trial to determine liability on the above-captioned case. Plaintiff, Drew Schneider, (hereinafter "Plaintiff") was present, represented by attorney James R. Russell, as well as attorney William M. Kovach, who appeared on behalf of Defendant Fifth Wheel, LLC (hereinafter "Fifth Wheel" or "Defendant"), owned by sole proprietor Geno Pikulik. Defendant's appearance at trial was previously excused by this Court.

At the conclusion of the trial, the Court made the following findings of fact:

(1) Plaintiff purchased a 1957 Mercedes Benz (hereinafter "the vehicle") from Joseph Saladin (hereinafter "Seller") for $57,000.00.

(2) Defendant was commissioned through a broker to deliver the vehicle to Plaintiff, shipping it from Spokane Valley, WA, to Medina, OH.

(3) The vehicle's selling price was based on its condition as released to Defendant, with cracks in the paint, but with no spots or stains on the paint or cloth top, as is consistent with the testimony of Seller.

(4) Defendant loaded and secured the vehicle onto the lower level of a dual-deck open flatbed trailer made to transport multiple vehicles, with no covering or protective barriers from its surrounding environment.

(5) A bill of lading was signed by Seller at the time Defendant obtained possession of the vehicle, prior to shipment. Plaintiff was not presented with the bill of lading until after delivery of the vehicle.

(6) Seller was not an agent of Plaintiff.

(7) Defendant did not effectively limit its liability for damage caused by leaking fluids by contacting Plaintiff prior to taking possession or transporting the vehicle.

(8) While in possession of Defendant, the exterior of the vehicle was damaged due to fluid leaking from another car being transported by Defendant.

(9) The vehicle was damaged when delivered to Plaintiff, and not in the same condition as it was when possession was transferred to Defendant for shipment.

(10) The cost to repair the defects in the exterior of the vehicle caused by Defendant's negligence is $12,383.00, according to Plaintiff's expert, Tom Hissen.

Law and Analysis

This case is properly determined under the Carmack Amendment, 49 U.S.C. 11706, which "makes a motor carrier fully liable for damage to its cargo unless the shipper has agreed to some limitation in writing." *Exel, Inc. v. S. Refrigerated Transp., Inc.*, 807 F.3d 140, 148 (6th Cir. 2015) (*citing* 49 U.S.C. 11706(a), (c), 14101(b)). To establish a prima facie case under Carmack, a Plaintiff must show (1) delivery of the goods to the carrier in good condition, (2) arrival of the goods in damaged condition, and (3) the amount of damages caused by the loss. *Mitsui Sumitomo Ins. Co. v. Daily Express, Inc.*, No. 1:15-cv-316, 2015 WL 6506546 (S.D. Ohio Oct. 28, 2015); *Custom Rubber Corp. v. ATS Specialized, Inc.*, 633 F. Supp. 2d 495 (N.D. Ohio 2009) (*citing Plough, Inc. v. Mason & Dixon Lines*, 630 F.2d 468 (6th Cir. 1980)). Once a shipper establishes its prima facie case, the carrier is liable unless it can establish (1) that it was

free from negligence, and (2) that the damage to the cargo "was caused solely by: '(a) the act of God[;] (b) the public enemy; (c) the act of the shipper himself; (d) public authority; [or] (e) [] the inherent vice or nature of the goods.'"  *Custom Rubber Corp.*, 633 F. Supp. 2d at 509 (*quoting Plough,* 630 F.2d at 470 (*citing Missouri Pacific R.R. v. Elmore & Stahl*, 377 U.S. 134, 137, 84 S. Ct. 1142, 12 L.Ed.2d 194 (1964))).

Although the Carmack Amendment has a default posture imparting full liability on the carrier for goods damaged during shipment, the statute provides a narrow exception whereby a carrier may limit its liability.  *Exel, Inc.* 807 F.3d at 150 (*citing Toledo Ticket Co., v. Roadway Express, Inc.*, 133 F.3d 439, 442 (6th Cir. 1998)); *see ABB Inc. v. CSX Transp., Inc.*, 721 F.3d 135 (4th Cir. 2013) ("The Carmack Amendment's exception allowing for limited liability is 'a very narrow exception to the general rule' imposing full liability on the carrier.") (*quoting Toledo Ticket,* 133 F.3d at 442).  In order to limit its liability, a carrier must:

> (1) maintain approved tariff rates with the ICC; (2) provide the shipper with a fair opportunity to choose between two or more levels of liability; (3) obtain the shipper's written agreement as to its choice of liability; and (4) issue a receipt or bill of lading prior to moving the shipment.

*Id.* (*citing, e.g., Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 715 (6th Cir. 1999); *Toledo Ticket,* 133 F.3d at 442) (internal page numbers omitted).  Further, "the carrier must provide the shipper with both reasonable notice of any options that would limit the liability of the carrier and the opportunity to obtain the information about those options that will enable the shipper to make a deliberate and well-informed choice."  *Id.* (*quoting Toledo Ticket,* 133 F.3d at 442).  A carrier holds the burden to prove that it complies with these requirements.  *Id*.  (*citing OneBeacon Ins. Co. v. Haas Indus.*, 634 F.3d 1092, 1099 (9th Cir. 2011)).

Accordingly, based on the above findings of fact in this case, the Court finds Defendant carrier is liable to Plaintiff for damages incurred to the vehicle while in transport under the

Carmack Amendment. Defendant was commissioned to deliver the vehicle to Plaintiff after he purchased it from Seller. Testimony and photographs in evidence show the vehicle was delivered to Defendant with some cracking and wear to the exterior paint job, but otherwise in good condition. Defendant does not contest that the vehicle sustained exterior damage due to fluid leaked from another automobile while in possession of Defendant, and was thereby delivered to Plaintiff in a damaged condition.

This Court finds no merit to Defendant's argument that it is not liable under Carmack. First, although the parties do not dispute that the vehicle was transported in a manner customary in the industry—namely, a dual-deck open flatbed trailer—Defendant has not met its burden to show it was both free from negligence *and* that one of the requisite causes of the damage applied in this case. Defendant's argument that the damage was caused due to the inherent vice or nature of cars *as a class* to leak fluid is not persuasive. Case law in the Sixth Circuit shows that this exception may apply where the damage was caused by the inherent nature of the shipped product itself. *See generally* [Plough, 630 F.2d at 471](considering the qualities of the shipped product itself to determine whether the inherent vice exception under Carmack applied). Accordingly, as related to the inherent nature of a car to leak fluid, this exception would apply if the damage to the vehicle was caused by its own propensity to leak fluid, regardless of whether cars in general, by their nature, leak fluid. Here, however, the damage was due to the leaking fluid of another car also transported by Defendant, and Defendant has not provided any authority in support of its argument that this exception requires only a showing that cars, as a class of goods, have an inherent tendency to leak fluids. Further, Defendant has failed to provide any authority to support its argument that Plaintiff's decision to have the product shipped in a customary method establishes that he, therefore, was the sole cause of the damage, without having taken any

affirmative action or inaction that led directly to fluid leaking from another car onto the vehicle. *See generally* [Super Service Motor Freight Co. v. United States, 350 F.2d 541](#), 546-47 (6th Cir. 1965) ("Within the [acts of the shipper] exception fall such acts as the improper or faulty packing and preparation for shipment [by the shipper]…when the loss or injury occurs by reason of the fact that the goods have been improperly or defectively packed, the carrier is relieved of liability."). Indeed, Plaintiff had no contact with the vehicle until after the damage was incurred, as the point of delivery was the first time Plaintiff had access to the vehicle. Further, evidence established the Defendant was responsible for loading the vehicle and preparing it for transport, leading to its positioning, uncovered, beneath the car that subsequently leaked the damage-causing fluids.

Defendant also did not meet the requirements necessary in order to effectively limit its liability for damage incurred while the vehicle was in its custody. As set out above, the law requires that a shipper must be made aware of a carrier's intent to limit its liability, must agree to the limitation in writing, and must be provided with the bill of lading *prior* to shipment. Defendant argues the bill of lading limited its liability for damage due to leaking fluids during transport, because the limitation was set forth in writing on the document, and signed by both the Seller and Plaintiff. However, the evidence shows Plaintiff was not made aware of this limitation, and thereby could not consent to it in writing prior to shipment; rather, he signed the document on receipt of the vehicle. Although the bill of lading was provided to, and signed by, Seller before the vehicle was transferred into the custody of Defendant, Seller was not established as an agent of Plaintiff and thus could not consent to the limitation on behalf of Plaintiff.

5

A successful plaintiff is entitled to recover its actual loss under the Carmack Amendment. The "actual loss" may be calculated as either the amount of reduction in market value due to the damage, or the costs of repairing the damaged goods.  *Custom Rubber*, 633 F. Supp. 2d at 515-16.  The Sixth Circuit has held it is "reasonable to use the cost of repair as the basis for determining the amount of" damages where the costs of repair "are readily ascertainable and a fairly reliable indicator of the reduction in market value at destination." *Id*. at 516.  Other courts have found that the measure of damages under Carmack is "often dependent on the special circumstances of an individual case," and allow for application of another method of calculation that "will better compute actual damages." *Complete Distrib. Servs. v. All States Transp., LLC*, 2015 WL 5764421, *2 (Dist. Ore. Sept. 30, 2015) (*citing F. J. McCarty Co. v. S. Pac. Co*., 428 F.2d 690, 692 (9th Cir. 1970)); *see Crompton Greaves, Ltd. v. Shippers Stevedoring Co*., 776 F. Supp. 2d 375, 394 (S.D. Tex. 2011) ("[D]ifferent factual situations may require the application of a different measure of damages.").  However, "[t]he owner of goods received in a damaged condition is not, in any event, entitled to a windfall," and "the shipper's compensation cannot exceed more than his injury: i.e. the actual loss of or to the cargo." *Houmani v. Roadway Express, Inc.*, Case No. 3:07CV1552, 2008 WL 731497, *1 (N.D. Ohio Mar. 17, 2008) (*citing Project Hope v. M/V IBN SINA*, 250 F.3d 67, 77 (2nd Cir. 2001); *American Nat. Fire Ins. Co. v. Yellow Freight Systems, Inc*., 325 F.3d 924 (7th Cir. 2003)).

This Court finds the cost of repair, and not the diminution of market value, is the appropriate measure of damages under the circumstances of this case.  The record establishes the dynamic nature of the market for classic automobiles such as Plaintiff's damaged vehicle, and that the vehicle may have increased in value despite the damage sustained while in the custody of Defendant.  Further, Plaintiff has offered only his own opinion as to the potential resale value of

the vehicle, acknowledging that "the market is up and down."  Despite the potential increase in market value of the car in its current condition, neither party has demonstrated determinative values so as show either the decrease in value caused by the damage at the time of delivery, nor that the value of the car could have increased more at this point had the damage never occurred.

Although Defendant argues, and Mr. Hissem confirms, the new paint job will leave the car with a higher quality paint job than it had at the time of purchase, Plaintiff has presented sufficient evidence to convince this Court that the award is reasonable under the particular circumstances of this case.  Although Mr. Hissem admits this paint job is of a higher quality and cost than might be available through a different automotive body work provider, Defendant has offered no evidence of what that lower cost might be (e.g., an estimated quote from Maaco), beyond mere speculation.  Further, Defendant has failed to effectively rebut Mr. Hissem's testimony that, while a lower quality paint job might be acceptable for a different car, the method and quality paint job used as the basis for his quote is the industry standard for classic automobiles such as the vehicle at issue here. Accordingly, this Court orders Defendant to pay damages in the amount of twelve thousand, three hundred eighty-three dollars ($12,383.00), the quoted amount by Mr. Hissem as to the cost of repainting the vehicle.

**IT IS SO ORDERED**.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: August 22, 2016.